IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORINDA INTELLECTUAL PROPERTIES
USA HOLDING GROUP, INC.,

    Plaintiff,

v.

SONY ELECTRONICS CORP.; SONY
COMPUTER ENTERTAINMENT, INC.; and
SONY COMPUTER ENTERTAINMENT
AMERICA, INC.,

    Defendants.
                                          /

No. C-09-04920 EDL

**ORDER GRANTING MOTION TO STAY PENDING REEXAMINATION**

Defendant Sony Corporation and its affiliates ("Sony") filed a Motion to Stay the Proceeding Pending Reexamination on January 5, 2010, and thereafter the parties stipulated to continue briefing and hearing of the motion and stay the case. The Court recently notified the parties that it would not grant their request for an additional continuance and stay without withdrawal of the pending motion without prejudice to refiling, and the parties elected to complete briefing on the motion and have the Court rule on it. Having considered the papers, the Court finds resolution of the motion appropriate without oral argument, and hereby GRANTS Sony's motion and stays the case pending reexamination by Patent Trademark Office.

## I.   BACKGROUND

Plaintiff Orinda Intellectual Properties USA Holding Group, Inc. ("Orinda") filed this patent infringement action against Sony on August 20, 2008 in the Eastern District of Texas. The infringement action relates to U.S. Patent No. 5,438,560, a patent with three independent claims and

1  no dependent claims.  See Barilovits Decl. Ex. A ('560 Patent).  In December, 2008, Sony filed a
2  motion to transfer venue and briefing was complete by February 2009.  Orinda served its
3  infringement contentions in August 2009 (Barilovits Decl. Ex. B) and the parties exchanged Rule 26
4  disclosures in September 2009.  Pursuant to Local Rule, Sony was required to serve its invalidity
5  contentions in October 2009, but prior to the deadline the Texas court ruled on the transfer motion,
6  ordered the case transferred to this district, and suspended discovery.

7       On December 21, 2009, Sony filed a request for *ex parte* reexamination of the '560 Patent, as
8  well as a replacement request on January 20, 2010.   Barilovits Decl. Ex. C; Reply Decl. Exs. A, B.
9  Sony claims that its reexamination request relied in part on positions taken by Orinda in its
10 infringement contentions, in that if the claims are given the broad scope needed to support Orinda's
11 infringement contentions, they would necessarily be invalid over prior art, including several new
12 prior art references.  Motion at 3.  In January 2010, Sony filed the instant motion to stay the case
13 pending reexamination.  On April 19, 2010, the PTO granted Sony's request for reexamination, but
14 no further action has been taken. Opp. at 3; Reply Decl. Ex. A.  Since the motion to stay was filed,
15 the parties have filed five stipulated requests to continue briefing and hearing on the motion and to
16 stay the case due to ongoing settlement efforts.  Sony contends that each of these requests were at
17 Orinda's behest, and that it accommodated the requests out of professional courtesy.  Reply at 4; see
18 also Dkt. Nos. 76, 80, 82, 92, 97 (stipulations all prepared and filed by Orinda).

19 **II.    LEGAL STANDARD**

20      Reexamination is a procedure in which a party asks the PTO to reexamine or reevaluate the
21 validity of a United States patent that has already issued.  35 U.S.C. § 302.  Congress instituted this
22 process "to shift the burden of reexamination of patent validity from the courts to the PTO."  Canady
23 v. ERbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002).  Courts have the discretion
24 to stay judicial proceedings pending patent reexamination, but are not required to do so.  Fresenius
25 Medical Care Holdings, Inc. v. Baxter Intern, Inc., 2007 WL 1655625 at *2 (N.D. Cal. June 7,
26 2007). In determining whether to stay a case pending re-examination, the Court considers factors
27 such as:  (1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3)
28 whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving

2

party. Telemac Corp. v. Teledigital, Inc., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006).  In light of the overlapping proceedings in this Court and before the PTO, this inquiry requires the Court to carefully consider the particular posture of the litigation before it, and do its best to make a difficult judgment call about the most efficient and fair way to proceed here, despite the uncertainty about the timing and final outcome of future proceedings in another forum.  See Fed. R. Civ. P. 1.

**III.    ANALYSIS**

   **A.    Stage of the Case**

Sony argues that this factor favors a stay because, despite the fact that the case has been pending for almost two years, little substantive work has been done in this case and any additional work could be obviated or at least significantly streamlined by the outcome of the reexamination. Sony cites cases where courts have granted a stay in part because little discovery had been conducted, claim construction had not occurred, and/or a trial date had not been set.  See, e.g., Tse v. Apple, Inc., 2007 WL 2904279 (N.D Cal. 2007) (finding that case was in its "nascent stages" despite having been filed more than two years earlier and transferred from another district, where "nothing substantive beyond preliminary infringement contentions has been exchanged"); Network Appliance Inc. v. Sun Microsystems Inc., 2008 WL 2168917 (N.D. Cal. May 23, 2008) (finding that stage of the case somewhat favored stay where "no summary judgment motions have been scheduled, briefed or heard, and no trial date has been set, all of which will necessarily entail a significant amount of work" even though case pending for almost two years); Advanced Analogic Tech, Inc. v. Kinetic Tech., Inc., 2009 WL 4981164 (N.D. Cal. Dec. 15, 2009) (allowing stay after trial date set but no claim construction or summary judgment briefs filed); Speedtrack, Inc. v. Wal-Mart.com USA, LLC, 2009 WL 281932, at *1 (N.D. Cal. 2009) (granting stay where damages discovery had not started and trial date had not been set).

Orinda counters that it has already invested significant time and resources analyzing case strategy, preparing infringement contentions, responding to motions (presumably the motion to transfer venue, as that appears to be the only substantive motion previously decided), and engaging in alternative dispute resolution proceedings. Orinda argues that allowing a stay would "potentially render the expense and time already expended a futile rehearsal, as the parties may ultimately have

1  to begin the process anew following reexamination." Opp. at 7 (quoting Ultra Products, Inc. v.
2  Antec, Inc., 2010 U.S. Dist. LEXIS 50096 (N.D. Cal. April 26, 2010). However, this case differs
3  significantly from Ultra Products in that there, the request for reexamination had not yet been
4  granted and the parties had a scheduling order in place and discovery and claim construction were
5  "well under way." Id. at *15. In contrast, here the request for reexamination has been granted and
6  no discovery or claim construction has begun.

7  The work that Orinda claims to have already performed – analyzing its case against Sony and
8  preparing infringement contentions, responding to a motion to transfer venue which has already been
9  granted, and participating in ongoing alternative dispute resolution – is not the type of prior case
10 development and progress that cuts against a stay. See, e.g., Affinity Labs of Texas v. Apple, Inc.,
11 2010 U.S. Dist. LEXIS 50974 (N.D. Cal. 2010) (factor weighed in favor of stay where only activity
12 in case was motion to transfer from Texas to California). Little or no discovery (other than Rule 26
13 disclosures) has been exchanged, the initial case management conference in this district has not
14 occurred, and no claim construction or summary judgment proceedings have been scheduled and
15 therefore, despite the time since filing, this case is in its early stages.

16  For the foregoing reasons, this factor weighs in favor of a stay.

### B.     Simplification of Court Proceedings

18  Sony argues that the outcome of the *ex parte* reexamination has the potential to greatly
19 simplify or moot the case because in a large percentage of proceedings claims are either cancelled or
20 modified. It cites the September 2009 PTO statistics relating to the historical outcome of all *ex parte*
21 reexamination filings showing that claims are amended in 64% of *ex parte* reexaminations and all
22 claims are cancelled in 11% of them. See Barilovits Decl. Ex. D. More recent statistics from June
23 2010 are even slightly more favorable, with claims amended in 65% of *ex parte* reexaminations and
24 all claims are cancelled in 12% of them. Sony also points to the PTO's decision to grant the
25 reexamination, in which it found seven substantial new questions of patentability affecting all three
26 claims of the patent in suit. Reply Decl. Ex. A. It points out that there is a 77% chance that the
27 claims will be cancelled or modified as a result of the reexamination. Sony contends that the
28 likelihood of a favorable outcome that would moot the case is especially strong in this case, which

4

relates to a patent with only three claims, all of which are at issue in the reexamination. See also Nanometrics, Inc. v. Nova Measuring Instruments, Ltd., 2007 WL 627920 (N.D Cal. Feb. 26, 2007) (if PTO found that some or all of the patent claims of the sole patent at issue were invalid, court would have wasted resources and parties would have spent funds addressing an invalid claim or claims). Sony contrasts this situation with cases involving multiple cross-asserted patents, where a stay of the case with respect to one patent undergoing reexamination would do little to simplify the remainder of the case.

Orinda counters that Sony's argument that the case will be simplified based on PTO statistics is speculative because the PTO has not issued any office action yet. Orinda relies on Network Appliance Inc. v. Sun Microsystems Inc., 2008 WL 2168917 (N.D. Cal. 2008), where this Court held that this factor weighed against a stay in part because "[t]he decision of whether or not to stay a case pending reexamination is very case specific," and that "general and limited statistics [we]re not very helpful in predicting the outcome of issuing a stay" in the case before it. Id. at *3-4. Orinda argues that this case is similar because no action has been taken in the reexamination proceeding and reexamination has only recently been granted. However, this case differs significantly from NetApp because there, the "majority of the case w[ould] proceed no matter what" because multiple other patents were at issue and the patents all involved similar technology, so there would be considerable overlap between discovery related to the three patents at issue in the reexamination and the other sixteen patents in the case. Id. Claim construction, dispositive motions, and trial on the other patents in the case, as well as more in two related cases, would have proceeded regardless of whether the Court granted the stay. Id. The Court expressly distinguished single-patent cases such as this one where the case would likely be moot or simplified if the claims were rendered invalid or modified. Id. at *3.

Additionally, Sony persuasively points out that even if the claims are not invalidated or amended, their scope may be narrowed or clarified as a result of arguments made by Orinda in the reexamination proceedings, which would naturally simplify these proceedings. See CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("through statements made during prosecution or reexamination an applicant for a patent or a patent owner, as the case may be, may

5

commit to a particular meaning for a patent term, which meaning is then binding in litigation"). And if the claims are amended, allegedly infringing acts prior to the issuance of the reexamination are irrelevant. Bloom Engineering Co. v. M. Am. Mfg. Co., 129 F.3d 1247, 1249-50 (Fed. Cir. 1997).

Because there is only one patent with three claims at issue here, and reexamination has been granted as to all of them, the case will be rendered moot if the claims are rendered invalid or simplified if they are modified. While the PTO statistics are not entirely helpful, and no initial office action has issued, it is also true that the PTO's analysis and Orinda's representations in that forum would be useful in guiding the Court's decision and could greatly simplify the case even if no changes to the claims are made. Accordingly, this factor also favors a stay.

### C. Undue Prejudice or Tactical Disadvantage

Sony's moving papers preemptively argued that the Court should reject any argument by Orinda that it will be prejudiced because the patent could expire during the stay (thereby foreclosing its ability to obtain an injunction) because Orinda is a non-practicing entity. However, Orinda does not contend that it will be prejudiced in its effort to obtain an injunction, so the Court need not address this argument. Instead, Orinda contends that it will be prejudiced and tactically disadvantaged because: (1) the case is already two years old and a stay will be lengthy, (2) Sony is deliberately seeking to delay the case, and (3) there is a potential that access to evidence and witnesses may be limited or eliminated. Opp. at 3.

Specifically, Orinda argues that the average duration of an *ex parte* reexamination is 28.4 months (Gale Decl. Ex. A) and this additional time would clearly put it at a disadvantage. Orinda does not specifically explain how it will be disadvantaged by the lapse of time, but cites Ultra Products, where the Court found that "an additional three to six year delay tacked on to litigation that is already two years old certainly places the plaintiff at a tactical disadvantage." 2010 U.S. Dist. LEXIS 50096 at *14. However, in that case the PTO had not even granted the request for reexamination, and the court found that the timing of the reexamination request was suspect because the challenger had threatened to request reexamination for several years but did so only late in the litigation after discovery and claim construction were underway, unlike here. Further, Sony points to Manual of Patent Examining Procedure § 2263, which shortens the response time for Office

6

1  Actions in reexaminations where litigation is stayed for purposes of the reexamination from two
2  months to one month, and contends that the statistics relied on by Orinda are inflated because they
3  do not take this difference into account.  Finally, the "delay inherent to the reexamination process
4  does not constitute, by itself, undue prejudice," so this argument has little merit.  See KLA-Tencor
5  Corp. v. Nanometrics, Inc., 2006 WL 708661 (N.D. Cal. 2006).

6  Orinda next argues that Sony waited 16 months after the action was filed in which to request
7  reexamination, which it views as evidence of intentional delay that justifies denying a stay.
8  However, Sony counters that its December 2009 request for reexamination was based in part on
9  Orinda's August 2009 infringement contentions, and was filed not long after the ruling to transfer
10 the case to this district (a lapse of four months and two months, respectively) and it does not appear
11 to have threatened reexamination previously, so there is less evidence of intentional delay than in the
12 cases cited by Orinda.  Further, Sony points out that the early ten-month delay in the Texas district
13 court was due to its successful Motion to Transfer, which was necessitated because Orinda originally
14 filed the case in a district in which both sides had limited connections.

15 Orinda also argues that the errors in Sony's initial request for reexamination, which delayed
16 the request by another month, are also evidence of intentional delay.  See Telemac Corp. v.
17 Teledigital, Inc., 450 F. Supp. 2d 1107 (N.D. Cal. 2006) (finding that four requests for
18 reexamination that were missing necessary elements suggested movant was taking tactical advantage
19 of opportunities for delay).  However, it appears that the replacement reexamination request was due
20 to a technicality and was filed only eight days after the PTO notified Sony of the issue with the
21 original request, so this fact alone does not evidence intentional delay.  Finally, Orinda argues that
22 this delay has the potential to limit or eliminate access to evidence and witnesses.  See Ultra
23 Products, 2010 U.S. Dist. LEXIS 50096 (finding tactical disadvantage due to potential unavailability
24 of witnesses or evidence due to passage of time).  However, Orinda does not provide any specific
25 details or evidence on this point, so it is not especially persuasive.

26 While some of Orinda's arguments are facially appealing, some of the delay in this case is
27 apparently of its own doing.  In addition to the Motion to Transfer, Orinda has stipulated to continue
28 this motion and stay the case for more than six months (apparently at its own behest), and would

7

have been willing to continue the stay had the Court signed the most recent stipulation.  It is unclear why Orinda agreed to such a lengthy stay of the case and consideration of this motion if such delay were prejudicial.  Cf., Telemac, 450 F.Supp.2d at 1109, 11 (finding that, despite fact that eight month delay was due to parties mutual decision to attempt settlement instead of proceed with litigation, case was not in early stages because fact discovery cutoff was near and trial was approaching and "further delay could lead to further loss of information").  Therefore, Orinda has not made a sufficient showing of prejudice or tactical disadvantage, and this factor also favors a stay.

For all of the foregoing reasons, Sony's Motion to Stay is GRANTED.

**IT IS SO ORDERED.**

Dated: August 11, 2010

ELIZABETH D. LAPORTE  
United States Magistrate Judge